JS 44 (Rev. 11/04)        **CIVIL COVER SHEET**        **APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jade Jackson | Safeco Insurance Company |

**(b)** County of Residence of First Listed Plaintiff   **Philadelphia Co.**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Cheshire Co., NH**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Paul J. Bartolomeo, Esquire, The Pennsylvanian, Suite 1A1, 2401 Pennsylvania Avenue, Philadelphia, PA 19130

Attorneys (If Known)
Joseph Acquaviva, Esq., Bennett, Bricklin & Saltzburg, LLC, 1601 Market Street, 16th Floor, Philadelphia, PA 19103

**II. BASIS OF JURISDICTION** (Place an "X" in One Box)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and In Another State Principal Place of Business | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| X 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- X 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§1332, 1441 and 1446
Brief description of cause:
breach of contract and bad faith pursuant to 42 Pa. C.S.A. 8371

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ Over $50,000    CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes    ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 9/4/15    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

APPENDIX F

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 5215 Catherine Street, Philadelphia, PA 19143
Address of Defendant: 175 Berkeley Street, Boston, MA 02116
Place of Accident, Incident or Transaction   5226 Cedar Avenue, Philadelphia, PA 19143
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

                                                          Yes ☐        No X

Does this case involve multidistrict litigation possibilities?          Yes☐        No X
RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                       Yes☐   No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?        Yes☐   No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?        Yes☐   No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)
A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. Diversity Jurisdiction Cases:
1. X Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
(Check appropriate Category)
I,   Joseph Acquaviva _____, counsel of record do hereby certify:
   ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the claimed damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
   ☐ Relief other than monetary damages is sought.

**DATE:** September 4, 2015 _____   Joseph Acquaviva _____   204456 _____
                                          Attorney-at-Law             Attorney I.D.#
    **NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

**DATE:**   September 4, 2015 _____   Joseph Acquaviva, Esquire _____   204456 _____
                                        Attorney-at-Law             Attorney I.D.#

CIV. 609 (4/03)

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JADE JACKSON | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY | : | **NO:** |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
       and Human Services denying plaintiff Social Security Benefits          ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
       exposure to asbestos.          ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
       commonly referred to as complex and that need special or intense management by
       the court. (See reverse side of this form for a detailed explanation of special
       management cases.)          ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

| | | |
|---|---|---|
| 9/4/15 | | |
| **Date** | **Attorney-at-law** | **Attorney for Defendant** |
| | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JADE JACKSON | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY | : | **NO:** |
| | : | |

## NOTICE FOR REMOVAL

AND NOW, comes Defendant, Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company) (hereafter "Safeco" or "defendant"), for the purpose only of removing this case to the United States District Court for the Eastern District of Pennsylvania and respectfully avers as follows:

1.     This is a civil action filed and now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, July Term, 2015, No. 3031.

2.     Said action was commenced on July 27, 2015 via the filing of a Complaint.  True and correct copies of all processes, pleadings, and orders filed in state court are attached hereto as Exhibit "A."

3.     The Complaint was served upon defendant via certified mail on August 5, 2015. (*See* Ex. "A").

4.     The averments made herein are true and correct with respect to the date and time upon which suit was commenced and the date upon which this notice is being filed.

5.     This suit is of a civil nature and involves a controversy between citizens of different states.

6.     Plaintiff is a citizen of the Commonwealth of Pennsylvania.

7.     Defendant is now and was at the time plaintiff commenced this civil action and filed

the Complaint, a corporation organized under the laws of the State of New Hampshire with its principal place of business at 175 Berkeley Street, Boston, Massachusetts.

8.      Complete diversity between the parties existed on the date the Complaint was filed in state court, the date this action was removed to federal court, and all times in-between and currently.

9.      The Complaint asserts breach of contract and bad faith pursuant to 42 PA C.S.A. § 8371 against defendant.

10.      The underlying lawsuit against defendant arises out of its handling of a property damage claim for a loss that occurred on or about October 16, 2014 at 5226 Cedar Avenue, Philadelphia, Pennsylvania.  (*See* Ex. "A").

11.      Safeco seeks to remove this matter to the United State District Court for the Eastern District of Pennsylvania.  Safeco asserts that the amount in controversy in this matter exceeds $75,000.  As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court.  *Russ vs. State Farm Mutual Automobile Insurance Company*, 961 F.Supp. 808, 810 (E.D. Pa. 1997).

12.      In determining whether the jurisdiction amount has been satisfied, the Court must first look at the complaint.  *Angus vs. Shiley, Inc.*, 989 F.2d 142, 145 (3rd Cir. 1993).

13.      In both the breach of contract and bad faith counts, plaintiff is seeking compensatory damages in excess of $50,000.00 as well as interest upon the amount of the contract claim against defendant at prime rate plus three percent, punitive damages, attorney's fees and costs.

14.      With reference to the bad faith claim pursuant to 42 Pa. C.S.A. § 8371, plaintiff seeks attorney fees.  Attorney fees must also be included in determining the amount in controversy.  *Neff vs. General Motors Corp.*, 163 F.R.D. 478, 482 (E.D. Pa. 1995).  It would not be unreasonable to

expect that over the course of an approximate six month litigation, counsel could incur costs and fees in an amount approaching $20,000.

15.     In addition, plaintiff also seeks punitive damages pursuant to 42 Pa. C.S.A. §8371. Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. *Bell vs. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943).

16.     In the event plaintiff is able to sustain a finding of bad faith, although the propriety of same is disputed by defendant, it would not be unreasonable to expect that a punitive damage award two to three times the amount in controversy could be rendered by the trier of fact.

17.     Further, defendant's counsel inquired of plaintiff's counsel as to whether plaintiff was willing to execute a stipulation limiting the damages sought to an amount not exceeding $75,000.00. Plaintiff's counsel has refused to cap damages.

18.     Therefore, the amount in controversy exceeds $75,000, and this action is properly removable on diversity grounds.

19.     This notice of removal was filed within thirty (30) days from the date plaintiff served the Complaint on defendant, and this notice of removal is therefore timely under 28 U.S.C. § 1446.

20.     Defendant has simultaneously with the filing of this notice, given written notice to plaintiff.

21.     Defendant is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Philadelphia County.

22.     Pursuant to 28 U.S.C. § 1446(a), copies of all processes, pleadings, and orders filed with the state court are attached as Exhibit "A."

23.     Trial has not commenced in the state court action.

**WHEREFORE,** defendant hereby removes this suit to this Honorable Court pursuant to the laws of the United States in such cases made and provided.

**BENNETT, BRICKLIN & SALTZBURG, L.L.C.**

**By:** _____

PAMELA A. CARLOS, ESQUIRE
Attorney I.D. No. 56396
JOSEPH ACQUAVIVA
Attorney I.D. No. 204456
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
carlos@bbs-law.com
**Attorney for Defendant**
Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company)

DATE: September 4, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADE JACKSON | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY | : | **NO:** |
| | : | |

## NOTICE

**TO:**  Paul J. Bartolomeo, Esquire
The Pennsylvanian, Suite 1A1
2401 Pennsylvania Avenue
Philadelphia, PA 19130

PLEASE TAKE NOTICE that defendant, Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company), has filed in this Court a verified Notice for Removal of the State Court action, <u>Jade Jackson v. Safeco Insurance Company</u>, now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, July Term, 2015, No. 3031.

PLEASE TAKE FURTHER NOTICE that a certified copy of the Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania.

PLEASE BE ADVISED that by virtue of 28 U.S.C. §1446(f), the State action is now removed to this Court. The State Court has no further jurisdiction over this action and you should proceed no further in that Court or under its authority.

**BENNETT, BRICKLIN & SALTZBURG LLC**

**By:**  PAMELA A. CARLOS, ESQUIRE
Attorney I.D. No. 56396
JOSEPH ACQUAVIVA
Attorney I.D. No. 204456
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
carlos@bbs-law.com
acquaviva@bbs-law.com
Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company)

DATE: <u>September 4, 2015</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JADE JACKSON | : **CIVIL ACTION** |
| | : |
| v. | : |
| | : |
| SAFECO INSURANCE COMPANY | : **NO:** |
| | : |

### PROOF OF FILING

COMMONWEALTH OF PENNSYLVANIA:

§

COUNTY OF PHILADELPHIA                    :

Joseph Acquaviva, Esquire, being duly sworn according to law, deposes and says that he is an attorney with the law firm of Bennett, Bricklin & Saltzburg, LLC, attorneys for defendant, Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company).

That he did direct the filing with the Prothonotary of the Court of Common Pleas of Philadelphia County a copy of the Notice of Removal, attached hereto, said filing to be made on 4th day of September 2015.

**BENNETT, BRICKLIN & SALTZBURG LLC**

**By:** _____

PAMELA A. CARLOS, ESQUIRE
Attorney I.D. No. 56396
JOSEPH ACQUAVIVA
Attorney I.D. No. 204456
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
carlos@bbs-law.com
acquaviva@bbs-law.com
Attorney for Defendant

**Sworn to and subscribed
before me this 4th day
of September, 2015.**

_____
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADE JACKSON | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY | : | **NO:** |
| | : | |

### PROOF OF SERVICE

COMMONWEALTH OF PENNSYLVANIA:
§
COUNTY OF PHILADEPHIA                :

      Joseph Acquaviva, being duly sworn according to law, deposes and says that he is an attorney with law firm of Bennett, Bricklin & Saltzburg, LLC, attorneys for defendant, Safeco Insurance Company of America (incorrectly designated as Safeco Insurance Company), and that he did serve this 4th day of September  2015, the aforementioned notice to plaintiff upon the individual named below by depositing a copy of same in the United States Post Office box, postage prepaid, enclosed in an envelope plainly addressed to: Paul J. Bartolomeo, Esquire, The Pennsylvanian, Suite 1A1, 2401 Pennsylvania Avenue, Philadelphia, PA 19130.

                    **BENNETT, BRICKLIN & SALTZBURG LLC**

             **By:** _____

                  PAMELA A. CARLOS, ESQUIRE
                  Attorney I.D. No. 56396
                  JOSEPH ACQUAVIVA
                  Attorney I.D. No. 204456
                  1601 Market Street, 16th Floor
                  Philadelphia, PA 19103
                  (215) 561-4300
                  carlos@bbs-law.com
                  acquaviva@bbs-law.com
                  Attorney for Defendant

**Sworn to and subscribed**
**before me this** 4th **day**
**of** September **2015.**

_____
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2017

# EXHIBIT "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

JULY 2015                                003031

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JADE JACKSON | SAFECO INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5215 CATHERINE STREET<br>PHILADELPHIA PA 19143 | SAFECO PLAZA 1001 4TH AVENUE<br>SEATTLE WA 98185 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint          [ ] Petition Action          [ ] Notice of Appeal<br>[ ] Writ of Summons     [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[X] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 10 - CONTRACTS OTHER |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|
| **FILED**<br>**PRO PROTHY**<br><br>JUL 27 2015<br><br>**K. EDWARDS** | |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>JADE JACKSON</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| PAUL J. BARTOLOMEO | 2401 PENNSYLVANIA AVENUE<br>SUITE 1A1<br>PHILADELPHIA PA 19130 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)232-7200 | (215)232-2410 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 20600 | Pjbartesq@aol.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| PAUL BARTOLOMEO | Monday, July 27, 2015, 06:02 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

PAUL J. BARTOLOMEO, JR., ESQUIRE
IDENTIFICATION NO.: 20600
THE PHILADELPHIAN, SUITE 1A1
2401 PENNSYLVANIA AVENUE
PHILADELPHIA, PA 19130
(215) 232-7200 (tel)
(215) 232-2410 (fax)
pjbartesq@aol.com



Attorney for PLAINTIFF

JADE JACKSON                            :
5215 Catherine Street                   :       COURT OF COMMON PLEAS
Philadelphia, PA 19143                  :       PHILADELPHIA COUNTY
                                        :
                    Plaintiff,          :           Term,  2015
                                        :
        v.                              :       No.
                                        :
SAFECO INSURANCE COMPANY                :
Safeco Plaza                            :
1001 4th Avenue                         :
Seattle, WA  98185-0001                 :
                                        :
_____Defendant.             :

## COMPLAINT
## CONTRACT 1C-CIVIL ACTION

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court. Without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted, |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamenté, si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio, vaya en persona o llame por telefono a la oficina cuya dirección se encuentra escrita abajo para averiguar donde se puede conseguir asistencia.* |
| Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>One Reading Center<br>(215) 238-1701 | Legal Associación De Licenciados De Filadelfia,<br>Servicio De Referencia E Información Legal,<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>Telefono: (215) 238-1701 |

**COUNT I:**
**BREACH OF CONTRACT**

1.      Plaintiff is an individual citizen of the Commonwealth of Pennsylvania, resident therein at the above location.

2.      Defendant, Safeco Insurance Company, is a corporation which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains a place of business at the address set forth above.  Defendant regularly conducts business in the City and County of Philadelphia, Commonwealth of Pennsylvania.

3.      Defendant in its regular course of business issued to Plaintiff a policy of insurance entitled "Landlord Protection Policy", policy no. OK6160036, covering a residential premises owned by Plaintiff located at 5226 Cedar Avenue, Philadelphia, Pennsylvania, 19143 (see copy of policy attached and marked Exhibit "A").

4.      At all times pertinent hereto Defendant acted by its duly authorized agents, servants, workmen or employees, who acted within the course and scope of their employment.

5.      At all times pertinent hereto Plaintiff was the sole owner of the premises located at 5226 Cedar Avenue, Philadelphia, Pennsylvania, 19143.

6.      The referenced policy was issued for the one (1) year period commencing August 5, 2014 and ending on August 5, 2015.

7.      The policy in question includes insurance for accidental direct physical loss to the property, including loss resulting from fire.

8.      On or about October 16, 2014, the aforesaid premises were damaged as a result of a fire.

9.      Plaintiff made timely notice of claim and has cooperated in all respects with Defendant's investigation of this matter.

10.      By letter of November 6, 2014, Defendant acknowledged Plaintiff's notice of claim and issued its "reservation of rights letter". (see copy of letter attached and marked Exhibit "B").

2

Case ID: 150703031

11.     The Plaintiff has received notifications from the City of Philadelphia Department of Licenses and Inspections advising that the building is unsafe and advising the Plaintiff that if repairs are not made promptly, the City of Philadelphia may take action including demolition (see copy of notice dated December 3, 2014 attached and marked Exhibit "C").

12.     The Plaintiff does not have funds sufficient to make the necessary repairs.

13.     The Plaintiff has notified the Defendant of the notices received from the Department of Licenses and Inspections.

14.     Despite this, the Defendant has failed to make a decision regarding coverage of the claim (see e.g. letters of December 9, 2014 and February 26, 2015, marked Exhibit "D" and "E" respectively).

15.     The Plaintiff has consistently complied with Defendant's requests for information regarding the investigation, including submitting to an Examination Under Oath on May 13, 2015.

16.     Despite Plaintiff's consistent cooperation, the Defendant has not made a decision regarding coverage, now more than nine (9) months post incident.

17.     However, the Defendant has issued a nonrenewal notice to the Plaintiff based on the open fire claim of October 16, 2014 (see copy of nonrenewal notice attached and marked Exhibit "F").

18.     At the time the policy went into effect, the Plaintiff had in place a residential lease which was entered into on June 1, 2014 for a one (1) year period, with a tenant named Kenyon Robinson with monthly rental payments of $1,100 per month (see copy of residential lease attached and marked Exhibit "G").

19.     As a result of the fire the said tenant has been unable to reside in the premises, and has discontinued his monthly rental payments.

20.     The policy in question includes coverage for loss of rent as a result of damage from a covered peril.

21.     The Plaintiff cannot afford to repair the damages caused by the fire in order to allow her to find a new tenant for the premises without the insurance proceeds.

3

Case ID: 150703031

22.     The Defendant knew at all times pertinent hereto that the Plaintiff had intended to use the premises as a rental property, as demonstrated by the policy being designated "Landlord Protection Policy". (See Exhibit A)

23.     Plaintiff has made repeated requests for benefits under her policy for losses set forth herein, and Defendant has consistently failed and refused to pay Plaintiff those benefits due and owing under said policy, as a result of which Defendant has breached its contractual obligations to Plaintiff under the policy in question.

WHEREFORE, Plaintiff demands judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000) together with interest and costs.

## COUNT II:
## BAD FAITH

24.     Plaintiff incorporates paragraphs one (1) through twenty-three (23) as fully as though same were set forth at length.

25.     Under 42 Pa. C.S.A. 8371, a Court is empowered, upon a finding of bad faith by an insurer, to make an award of damages including full compensation, interest at the prime rate of interest plus three (3) per cent per annum, court costs, attorney fees and punitive damages against the insurer.

26.     Defendant knows or should know that the Plaintiff cannot afford to make the necessary repairs without insurance proceeds payable for this claim.

27.     In addition, allowing the premises to remain in its current state of disrepair places Plaintiff at risk for further damage and loss due to the fact that it is currently uninhabitable.

28.     Despite this knowledge, Defendant has now issued a notice of non-renewal of the policy, thereby exposing Plaintiff's premises to further risk without the possibility of securing insurance coverage from another source.

4

Case ID: 150703031

29.     The provisions of the Pennsylvania Code require that investigations into insurance loss claims are to be completed within thirty (30) days unless there exists a reasonable basis for additional investigation (see 31 Pa. Code 146.6).

30.     There exists no reasonable bases for further investigation into this claim.

31.     The Plaintiff has submitted to an Examination Under Oath and provided all other information available to her relative to the source of the fire.

32.     However Defendant has not made a decision as to the coverage of her claim more than nine (9) months after the date of the fire.

33.     Defendant has made numerous requests of Plaintiff for personal information, such as income tax returns and cell phone records, none of which have any relevance to this claim, and all of which are motivated by an intention to harass, embarrass and intimidate the Plaintiff, and to delay the timely processing of the claim.

34.     The Defendant's decision to non-renew Plaintiff's policy, even though no decision has been made on the merits of Plaintiff's claim, results in exposing the Plaintiff's property to further damage without the possibility of coverage from another source.

35.     This also has the effect of harassing, embarrassing and intimidating the Plaintiff.

36.     An insurance carrier may not cancel or refuse to renew a policy unless there has been a substantial change or increase in the hazard assumed by the company [(see 31 Pa. Code 146.1 and 40 P.S. 1171.5(a)(9)]

37.     The Defendant's notice of non-renewal states as its reason for non-renewal: "Due to the 10-16-14 fire loss (open)." (see Exhibit F)

38.     In fact, there has been no change in the risk taken on by the Defendant when it wrote the policy.  The only change has been the fact that a fire occurred which is a covered loss under the policy, and for which the Defendant has failed and refused to provide coverage.

39.     The Defendant has created an inordinate delay in the investigation of this claim.

40.     The Defendant knows, or should know, that the Plaintiff does not have the financial resources to repair the premises without receipt of the insurance proceeds.

Case ID: 150703031

41.     The delay in resolving this matter has been caused entirely by the Defendant's actions or inactions.

42.     The Defendant's actions in handling this claim have violated provisions of the Pennsylvania Unfair Insurance Practices Act (see 40 P.S. 1171 et seq.) and the Pennsylvania Insurance Commission's standards for prompt investigation of claims (31 Pa. Code 146.1 et seq.).

43.     As a result of its conduct in this matter, the Plaintiff has been required to retain counsel and to incur additional expenses in connection with assessing her damages and pursuing litigation of this claim in order to recover the benefits for which she has paid and to which she is legally entitled.

WHEREFORE, Plaintiff demands judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000) together with interest and costs.

PAUL J. BARTOLOMEO, JR., ESQUIRE
Attorney for Plaintiff Jade Jackson

6

Case ID: 150703031

## VERIFICATION

The undersigned hereby verifies that the allegations made in the foregoing document are true and correct to the best of her/his knowledge, information and belief. She/he understands that false statements herein are made subject to the penalties of 42 Pa. C.S.A. 4904 relating to unsworn falsification to authorities.

Date: 7/27/15

JADE JACKSON

Case ID: 150703031



**A Liberty Mutual Company**

# Your Insurance Policy

**EXHIBIT "A"**

 **Safeco Insurance**™
A Liberty Mutual Company

**POLICY NUMBER:** OK6160036

## SAFECO INSURANCE COMPANY OF AMERICA
Home office: Safeco Plaza, Seattle, WA 98185-0001 (A stock insurance company.)
## LANDLORD PROTECTION POLICY DECLARATIONS - SPECIAL FORM

**INSURED:**
JADE JACKSON
5215 CATHARINE ST
PHILADELPHIA PA  19143-2624

**AGENT:**
PENN AUTO AND HOME INC
PENNSYLVANIA INS ALLIANCE INC
13 SAINT ALBANS CIR STE D
NEWTOWN SQ      PA    19073-3622

TELEPHONE:  (610) 325-7366

**DESCRIBED LOCATION:**
5226 CEDAR AVE
PHILADELPHIA PA  19143-1525

**POLICY PERIOD FROM:** AUG.  5 2014
**TO:** AUG.  5 2015

**MORTGAGE SERVICING AGENCY:**
NONE

**1ST MORTGAGEE:**
NONE

**OCCUPANCY:** TENANT

**LOAN NO.:** NONE

| COVERAGES FOR THIS LOCATION | | LIMITS | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| A DWELLING | FIRE | $  261,500 | $ | 487.00 |
|  | SPECIAL |  |  | 819.00 |
| B OTHER STRUCTURES | FIRE | $   26,150 |  | INCL |
|  | SPECIAL |  |  |  |
| C PERSONAL PROPERTY |  | DECLINED |  |  |
| D LOSS OF RENT, RENTAL VALUE, & ADDL LIVING EXP. | | $   26,150 |  | INCL |
| **INCLUDED:** | | | | |
| ORDINANCE OR LAW COVERAGE | | $   26,150 |  | INCL |
| **OPTIONS:** | | | | |
| H-PREMISES LIABILITY (EACH OCCURRENCE) | | $  300,000 | $ | 71.00 |
| PERS. INJURY, WRONGFUL EVICTION, PRIVACY INVASION | | | | INCL |
| MEDICAL PAYMENTS (EACH PERSON) | | $    1,000 |  | INCL |
| **DEDUCTIBLES:** | | | | |
| PROPERTY COVERAGES, EXCEPT AS OTHERWISE NOTED | | | $     500 | |

**DWELLING ANNUAL PREMIUM** $ 1,377.00

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all other
billing plans are listed below. If more than one policy is billed on the installment
bill, only the highest fee is charged. The fee is:
    $2.00 per installment for recurring automatic deduction (EFT)
    $2.00 per installment for recurring credit card or debit card
    $5.00 per installment for all other payment methods

POLICY FORMS APPLICABLE TO THIS POLICY:
P-4200/EP 9/06, P-4103/EP 7/08, CHO-1227/EP 11/89, P-4110/PAEP 9/09,
P-4115/PAEP 11/09

*(vertical text at left margin: 1609072000000011616003693)*

ORIGINAL

Case ID: 150703031



**Safeco Insurance™**
A Liberty Mutual Company

## LANDLORD PROTECTION POLICY — SPECIAL FORM

### Table of Contents

| | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DWELLING COVERAGES** | 1 |
| Coverage **A** — Dwelling | |
| Coverage **B** — Other Structures | |
| Coverage **C** — Personal Property | |
| Coverage **D** — Loss of Rent, Rental Value and Additional Living Expenses | |
| Other Coverages | |
| **DEDUCTIBLE** | 6 |
| **PERILS INSURED AGAINST** | 6 |
| Dwelling, Other Structures and Personal Property | |
| **GENERAL EXCLUSIONS** | 8 |
| **GENERAL CONDITIONS** | 11 |
| **DEFINITIONS** | 15 |
| **OPTIONAL COVERAGES** | |
| Option H   -   Premises Liability | |

16090720000000116160036932

Case ID: 150703031

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## COVERAGES

**THIS INSURANCE APPLIES TO THE DESCRIBED LOCATION, COVERAGES FOR WHICH A LIMIT OF LIABILITY IS SHOWN AND PERILS INSURED AGAINST FOR WHICH A PREMIUM IS STATED.**

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes;

2. structures attached to the dwelling other than fences, patios, driveways or walkways;

3. attached carpeting, built-in appliances, fixtures;

4. materials and supplies on or adjacent to the Described Location for use in the construction, alteration or repair of the dwelling or other structures on this Described Location; and

5. if not otherwise covered in this policy, building equipment used for the service of and located on the Described Location.

This coverage does not apply to land, including land on which the dwelling is located or retaining walls separated by a clear space from the dwelling.

### COVERAGE B — OTHER STRUCTURES

1. We cover:

   a. fences, patios, driveways and walkways;

   b. other structures on the Described Location, separated from the dwelling by clear space, including other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

   This coverage does not apply to land, including land on which the other structures are located.

2. We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes;

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

   c. grave markers, including mausoleums.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location.

**Property Not Covered. We do not cover:**

1. money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold, goldware, gold-plated ware, silver, silverware, silver-plated ware, platinum and pewterware.

   Silverware, goldware and pewterware include:

   a. plateware, flatware, holloware, tea sets, trays, trophies and the like;

   b. other utilitarian items made of or including silver or gold; and

   c. all items of pewterware;

2. jewelry, watches, furs, precious and semiprecious stones;

P-4103/EP 7/08                                -1-

Case ID: 150703031

3. rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection;

4. securities, credit cards, electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes, manuscripts, passports, tickets, personal documents, and records or data;

    We do not cover these categories regardless of the medium (such as paper or electronic) on which the material exists;

5. firearms;

6. animals, birds or fish;

7. hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

8. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

9. *motorized vehicles.* This includes:

    a. equipment, accessories and parts, disassembled or not; or

    b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including its accessories.

        Accessories include:

    (1) antennas;

    (2) tapes, wires, records, discs or other media;

        that can be used with any device or instrument described above.

    *Motorized vehicles* not subject to motor vehicle registration which are:

    a. designed to assist the handicapped; or

    b. used solely to service the Described Location;

    are covered up to $1,000.

10. watercraft of all types, including their trailers, furnishings, equipment and outboard motors other than rowboats and canoes. This exception for rowboats and canoes does not include their outboard motors and trailers.

11. data, including data stored in:

    a. books of account, drawings or other paper records; or

    b. computers and related equipment;

12. rugs, carpets (except wall-to-wall carpet), tapestries, wall hangings or other similar articles for loss by theft;

12. water, steam or electricity;

13. grave markers, including mausoleums;

14. business property, other than furnishings and building equipment used to service the Described Location, located on or off of the Described Location;

15. articles separately described and specifically insured, regardless of insured limit, in this or any other insurance; or

16. property of roomers, boarders and other tenants.

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage **C** limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

Case ID: 150703031

## COVERAGE D — LOSS OF RENT, RENTAL VALUE AND ADDITIONAL LIVING EXPENSE

If a loss to property described in Coverage **A**, **B** or **C** by a **Peril Insured Against** under this policy makes the Described Location uninhabitable for its normal use, we cover:

1.  **Loss of Rent,** meaning loss of rental income to you from that part of the Described Location rented at the time of the loss, less any expenses that do not continue while that part of the Described Location rented is uninhabitable.

    This coverage does not apply to:

    a.  the Described Location or that part of the Described Location that is not rented or leased to a tenant at the time of the loss; or

    b.  to any increase in rent or lease payment that occurs after the time of the loss.

    A rental or lease within 60 days immediately prior to the loss shall be considered as rented at the time of the loss. Rental or lease includes a signed agreement for actual rental or lease within 60 days of the loss. Payment shall be based on the last actual monthly rental rate charged or the signed agreement.

2.  **Rental Value,** meaning loss of rental income due to delay in occupancy of that part of the Described Location held for rental if there is no tenant, or legal obligation for rent, or lease, by a tenant, at the time of the loss. This coverage applies only for the time that rental or lease by a tenant is delayed due to a covered loss. **Rental Value** does not include any expenses that do not continue while that part of the Described Location is uninhabitable.

    Our liability for **Rental Value** shall be no more than one half the coverage limit stated in the Declarations for Coverage **D**, and a monthly limit of no more than one twelfth of this limit for **Rental Value.**

    This coverage does not apply to any increase in rent or lease payment that occurs after the time of the loss.

Payment under **Loss of Rent** or **Rental Value** will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental but not to exceed 12 months.

3.  **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you if you are displaced from the Described Location so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 12 months or the amount shown in the Declarations for this coverage.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a **Peril Insured Against** in this policy, we cover **Loss of Rent**, **Rental Value** and **Additional Living Expense** for no more than two weeks during which use is prohibited.

Payment under **1.**, **2.**, or **3.**, above, reduces the Coverage **D** limit of liability by the amount paid. The Coverage **D** limit of liability is the most we will pay for the total of all payments made for **1.**, **2.**, and **3.**, above. The periods of time under **1.**, **2.**, or **3.**, above, are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## OTHER COVERAGES

The following **Other Coverages** are subject to all the terms, provisions, exclusions and conditions of this policy.

1.  **Debris Removal** — We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property.

    For trees, we will pay the reasonable expenses you incur, up to $500, for the removal of trees from the Described Location, provided the trees damaged the dwelling or other structures. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2.  **Improvements, Alterations and Additions** — If you are a tenant of the Described Location, you may use up to 10% of the Coverage **C** limit of liability for loss by a **Peril Insured Against** to improvements, alterations and additions made or acquired at your expense to that part of the

1609072000000116160036934

Described Location used only by you. Use of this coverage does not reduce the Coverage **C** limit of liability for the same loss.

3. **World-Wide Coverage** — You may use up to 10% of the Coverage **C** limit of liability for loss by a **Peril Insured Against** to property covered under Coverage **C** except rowboats and canoes, while anywhere in the world. Use of this coverage reduces the Coverage **C** limit of liability for the same loss.

4. **Reasonable Repairs** — We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

5. **Property Removed** — We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Lawns, Plants, Shrubs and Trees** — You may apply up to 5% of the amount shown on the Declarations for Coverage **A** for loss to, repair or replacement of plants, shrubs, or trees, or all lawns on the Described Location damaged by fire, lightning, explosion, riot or civil commotion, aircraft, vehicles, except vehicles owned or operated by you or a resident of the Described Location, vandalism or malicious mischief or damage by burglars.

   We shall not be liable for more than $500 on any one plant, shrub or tree or our proportion of $500 on shared ownership of any one plant, shrub or tree. We do not cover property grown for commercial purposes.

   For the purposes of this coverage, all lawns are considered one plant.

   Payment under this coverage reduces the Coverage **A** limit of liability by the amount paid.

7. **Fire Department Service Charge** — We will pay, up to $500, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect property from a **Peril Insured Against**.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

8. **Collapse.**

   a. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

      (1) The perils named under **Perils Insured Against, Coverage C — Personal Property;**

      (2) Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   b. Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under a.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

   c. With respect to this coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose;

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; or

Case ID: 150703031

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Land Stabilization.** We will pay up to $5,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

10. **Ordinance or Law.** We will pay for damage to **Coverage A — Dwelling or Coverage B — Other Structures** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

This coverage does not apply unless you choose to repair or rebuild the property at its present location.

We do not cover:

a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law;

b. the costs to comply with any ordinance or law which requires any **Insured** or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants** on any covered building or other structure.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in the Declarations is the most we will pay for the total of all loss or costs for **Coverage A — Dwelling or Coverage B — Other Structures**, regardless of the number of locations or number of claims made.

This coverage is additional insurance.

11. **Fungi, Wet or Dry Rot, or Bacteria.** We will pay up to $5,000 for:

a. the direct physical loss to covered property caused by **fungi**, wet or dry rot, or bacteria;

b. the cost to remove **fungi**, wet or dry rot, or bacteria from covered property;

c. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungi**, wet or dry rot, or bacteria;

d. the cost of any testing of air or property to confirm the absence, presence or level of **fungi**, wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided to the extent that there is a reason to believe there is the presence of **fungi**, wet or dry rot, or bacteria; and

e. **Coverage D — Loss of Rent, Rental Value and Additional Living Expense.**

This coverage only applies when such loss or costs:

f. are a result of a loss we cover that occurs during the policy period;

g. are not excluded under **General Exclusions**; and

h. result after all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to lawns, plants, shrubs or trees.

Regardless of the number of claims made or the number of locations, the $5,000 limit of liability is the most we will pay during the policy period shown in the Declarations for the total of all such loss or costs for Coverages A, B, C and D, and does not increase the limit of liability for these coverages.

12. **Household Products Coverage.** We cover direct physical loss to the property described in Coverages A and B resulting from a peril covered under this policy and arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products at the Described Location. Household products include items currently in use or your possession at the Described Location in normal household quantities, such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

Case ID: 150703031

We will pay up to 5% of the Coverage A limit of liability stated in the Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

**a.** any fee, assessment or expense of any governmental authority;

**b.** loss arising out of household products possessed or used:

   **(1)** for *business* purposes;

   **(2)** for illegal purposes;

   **(3)** by contractors; or

   **(4)** on driveways or walkways.

Item **8.** under **General Exclusions** does not apply to this **Other Coverage.**

In the event that a loss is covered under both this coverage and **Other Coverages, Ordinance or Law,** you may elect either one of these coverages, but not both.

## DEDUCTIBLE

In case of loss under this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations. The deductible does not apply to **Coverage D — Loss of Rent, Rental Value and Additional Living Expenses** or **Fire Department Service Charge.**

## PERILS INSURED AGAINST

### COVERAGE A — DWELLING AND COVERAGE B — OTHER STRUCTURES

We insure for accidental direct physical loss to the property described in Coverages **A** and **B** except:

1. losses excluded under **General Exclusions;**

2. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

   **a.** maintain heat in the building; or

   **b.** shut off the water supply and drain the system and appliances of water;

   A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of loss.

3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, foundation, retaining wall, bulkhead, pier, wharf or dock;

4. theft of any property which is not actually part of any building or structure covered;

5. theft in or to a dwelling or structure under construction, including materials or supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

6. wind, hail, ice, snow or sleet to outdoor radio and television antennas and aerials, including their lead-in wiring, masts or towers, or to lawns, trees, shrubs or plants;

7. **a.** wear and tear, marring, scratching, deterioration;

   **b.** inherent defect, mechanical breakdown or any quality in property that causes it to damage or destroy itself;

   **c.** smog, rust or other corrosion, or electrolysis;

   **d.** smoke from agricultural smudging or industrial operations;

Case ID: 150703031

e.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, bulkheads, foundations, footings, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

f.  birds, vermin, rodents, insects or domestic animals;

g.  pressure from or presence of plant roots.

If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water, unless otherwise excluded, and we cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or roof drain, gutter down spout or similar fixtures or equipment.

Under items **2.** thru **7.** any ensuing loss, not excluded or excepted in this policy, is covered.

## COVERAGE C — PERSONAL PROPERTY

We insure for direct physical loss to property described in Coverage C caused by a peril listed below unless the loss is excluded in the General Exclusions:

1.  **Fire or lightning.**

2.  **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening, or to:

    a.  lawns, plants, shrubs or trees;

    b.  canoes and rowboats.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft,** including self-propelled missiles and spacecraft.

6.  **Vehicles.**

    Loss must result from actual physical contact of a vehicle with covered property or with the building containing the covered property.

    This peril does not apply to loss to personal property transported by a vehicle unless the vehicle is first damaged by collision and the loss to personal property is a result of involvement in the collision.

7.  **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from fireplaces or from agricultural smudging or industrial operations including slash burns.

8.  **Vandalism or malicious mischief.**

    This peril does not include loss by pilferage, theft, burglary or larceny.

9.  **Damage by Burglars,** meaning damage to covered property caused by burglars.

    This peril does not include theft of property.

10. **Falling Objects.**

    This peril does not include loss to property contained in the building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

11. **Weight of ice, snow or sleet** which causes damage to property contained in the building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a.  to the appliance from which the water or steam escaped;

P-4103/EP 7/08                                                    - 7 -

    b.   caused by or resulting from freezing; or

    c.   on the Described Location caused by accidental discharge or overflow which occurs off the Described Location.

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the Described Location while the dwelling is unoccupied or being constructed, unless you have used reasonable care to:

    a.   maintain heat in the building; or

    b.   shut off the water supply and drain the system and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of loss.

15. **Sudden and accidental damage from artificially generated electrical current.** This peril does not include loss to a tube, transistor or similar electronic components.

## GENERAL EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance or Law,** meaning enforcement of requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion does not apply to the amount of coverage that may be provided under **Other Coverages, Ordinance or Law.**

   This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement,** meaning:

       a.   the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, sites election or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

       b.   erosion, shifting or displacement of materials supporting the foundation; and

       c.   volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

   This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

   Direct loss by fire, explosion, or theft is covered.

3. **Water Damage,** meaning:

       a.  (1)  flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

           (2)  release of water held by a dam, levee, dike or by a water or flood control device or structure;

           - 8 -

Case ID: 150703031

**b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems or other structure.

**c.** water which escapes or overflows from sewers or drains located off the Described Location; or

**d.** water which escapes or overflows from drains or related plumbing appliances on the residence premises. However, this exclusion does not apply to overflow and escape caused by malfunction on the residence premises, or obstruction on the residence premises, of a drain or plumbing appliance on the residence premises; or

**e.** water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

**4.** **Power Interruption,** meaning the interruption of power or other utility service if the interruption takes place away from the Described Location. If a **Peril Insured Against** ensues on the Described Location, we will pay only for loss caused by the ensuing peril.

**5.** **Neglect,** meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a **Peril Insured Against.**

**6.** **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**7.** **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

**8.** **Pollution or Contamination,** meaning loss resulting from the production, use, storage, discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, or contamination, of or by *pollutants or contaminants* whether actual, alleged or threatened at any time and however caused and whether or not within the knowledge or control of an *insured.*

This exclusion does not apply to the extent coverage is provided for in **Other Coverage, Household Products Coverage.** Direct loss by fire resulting from pollution or contamination is covered.

**9.** **Intentional Loss,** meaning any loss arising out of any act committed:

**a.** by or at the direction of any *insured* or any person or organization named as an additional *insured;*

**b.** with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

**c.** the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

**d.** the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **General Conditions, Mortgage Clause.**

**e.** For purposes of this provision, "domestic abuse" means:

**(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

**(2)** sexual assault of one family or household member by another;

**(3)** stalking of one family or household member by another family or household member; or

Case ID: 150703031

    **(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

10. **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    **a.** planning, zoning, development, surveying, siting;

    **b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.** materials used in repair, construction, renovation or remodeling; or

    **d.** maintenance;

    of property whether on or off the Described Location by any person or organization. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

11. **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

12. Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

13. *Fungi,* **Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Other Coverage 11.** *Fungi,* **Wet or Dry Rot, or Bacteria** under **Dwelling Coverages.**

14. **Collapse,** except as provided in **Other Coverages, Collapse.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

15. Any presence or condensation of humidity, moisture or vapor; or the continuous or repeated seepage or leakage of water or steam that occurs over a period of weeks, months or years, including but not limited to that from, around, through or contained by:

    **a.** plumbing, heating, or air conditioning systems or fire protective or other sprinkler systems;

    **b.** household appliances; or

    **c.** roofs, roofing materials, gutters, downspouts, skylights, windows, doors, vents, insulation and siding or other exterior finish materials, or any part, including the application or use of accessories, flashing, caulking or sealants.

    However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

16. **Illegal Manufacturing, Production or Operation,** meaning loss resulting from:

    **a.** the illegal growing of plants or the illegal raising or keeping of animals; or

    **b.** resulting from the illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.

    Such loss is excluded whether by vandalism or any other cause and whether or not within the knowledge or control of an *insured.*

17. Vandalism and malicious mischief, theft or attempted theft, damage by burglars, fire and any ensuing loss, including breakage of glass or safety glazing material, caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, theft or attempted theft, if the Described Location:

    **a.** is rented or held for rental as a residence and has not been occupied as a residence for more than 60 consecutive days immediately before the loss. Occupied as a residence means the place where an occupant or occupants are living as a primary residence; or

    **b.** is vacant for more than 60 consecutive days immediately before the loss.

    This exclusion does not apply if the dwelling is under construction. A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of the loss.

Case ID: 150703031

## GENERAL CONDITIONS

1. **Policy Period and Changes.**

   a. The effective time of this policy is 12:01 A.M. Standard Time at the Described Location. This policy applies only to loss which occurs during the policy period. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b. Changes:

      (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Your payment of the premium billed by us for the next policy period will be your acceptance of our offer.

      (2) This policy contains all agreements between you and us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premiums of $3.00 or less will be waived.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable in any one loss:

   a. for an amount greater than the interest of a person insured under this policy at the time of loss; or

   b. for more than the limit of liability that applies.

3. **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

   We may void this policy or deny coverage for a loss or occurrence if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

   We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or occurrence. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

4. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   a. cooperate with us in the investigation, settlement or defense of any claim or suit;

   b. give immediate notice to us or our agent;

   c. notify the police in case of loss by theft;

   d. protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *actual cash value* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. as often as we reasonably require:

      (1) exhibit the damaged and undamaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

      (3) submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured.* You shall not interfere with us examining any other *insured;*

   g. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

1609072000000116160036938

P-4103/EP 7/08                                    - 11 -                    Case ID: 150703031

    (2)  interest of the insured and all others in the property involved and all encumbrances on the property;

    (3)  other insurance which may cover the loss;

    (4)  changes in title or occupancy of the property during the term of the policy;

    (5)  specifications of any damaged building and detailed repair estimates;

    (6)  an inventory of damaged personal property described in **4.e.**; and

    (7)  receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent** and **Rental Value.**

**5.**   **Loss Settlement.** Covered property losses are settled as follows but not exceeding the applicable limit of liability stated in the Declarations:

  **a.**   the dwelling under **Coverage A — Dwelling:**

    (1)  We will pay the full cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

      (a)  the limit of liability under this policy applying to the dwelling;

      (b)  the replacement cost of that part of the damaged dwelling for equivalent construction and use on the same premises as determined shortly following the loss; or

      (c)  the amount actually and necessarily incurred to repair or replace the damaged dwelling.

    (2)  When more than one layer of siding, roofing or finished flooring exists, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

    (3)  When interior walls are constructed of plaster, we will pay for the plaster to be replaced with drywall. The payment will be subject to all other policy conditions relating to loss payment.

    (4)  When the cost to repair or replace the damage is more than $1,000, we will pay the difference between *actual cash value* and replacement cost only after the damaged or destroyed property has actually been repaired or replaced.

    (5)  You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage on an *actual cash value* basis. You may still make claim for any additional liability according to the provisions of this Condition 5. **Loss Settlement,** provided you notify us of your intent to do so within 180 days after the date of loss.

    (6)  The following property under **Coverage A — Dwelling** whether or not attached to buildings at *actual cash value* at the time of the loss, but not exceeding the amount necessary to repair or replace:

      (a)  carpeting;

      (b)  domestic appliances;

      (c)  awnings;

      (d)  outdoor antennas;

      (e)  outdoor equipment;

      (f)  materials and supplies for use in the construction, alteration or repair of the dwelling or other structures; and

      (g)  property under **Coverage A — Dwelling** that is unattached building equipment used for the service of and located on the Described Location.

  **b.**   property under **Coverage B — Other Structures** and **Coverage C — Personal Property** at *actual cash value* at the time of loss but not exceeding the amount necessary to repair or replace.

**6.**   **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

  **a.**   repair or replace any part to restore the pair or set to its value before the loss; or

  **b.**   pay the difference between *actual cash value* of the property before and after the loss.

Case ID: 150703031

7. **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or replacement cost, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or replacement cost of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

   Each party will:

   a.  pay its own appraiser; and

   b.  bear the other expenses of the appraisal and umpire equally.

8. **Other Insurance and Service Agreement.** If property covered by this policy is also covered by:

   a.  other insurance, we will pay only the proportion of the loss caused by any **Peril Insured Against** under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the property; or

   b.  a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

9. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

10. **Suit Against Us.** No action shall be brought unless there has been full compliance with all of the policy provisions and the action is started within one year after inception of the loss or damage.

11. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

   a.  reach agreement with you; or

   b.  there is an entry of a final judgment; or

   c.  there is a filing of an appraisal award with us.

13. **Abandonment of Property.** We need not accept any property abandoned by any *insured.*

14. **Mortgage Clause.**

   The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   a.  notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b.  pays any premium due under this policy on demand if you have neglected to pay the premium;

   c.  submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   If the policy is canceled by us, the mortgagee shall be notified at least 20 days before the date cancellation takes effect.

Case ID: 150703031

If we pay the mortgagee for any loss and deny payment to you:

   **a.**  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   **b.**  at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**15. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**16. Cancellation.**

   **a.**  You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   **b.**  We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      **(1)**  When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

      **(2)**  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

      **(3)**  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been material misrepresentation of fact which, if known to us, would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued.

         This can be done by notifying you at least 31 days before the date cancellation takes effect.

   **c.**  When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is canceled, the return premium will be pro rata.

   **d.**  If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 30 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**17. Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**18. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   **a.**  a subsequent edition of this policy; or

   **b.**  an amendatory endorsement.

**19. Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

**20. Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

**21. Death.** If you die, we insure:

   **a.**  your legal representatives but only with respect to the property covered under the policy at the time of death;

Case ID: 150703031

      **b.**  with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**22. Nuclear Hazard Clause.**

      **a.**  *"Nuclear Hazard"* means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

      **b.**  Loss caused by the *nuclear hazard* shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the **Perils Insured Against.**

      **c.**  This policy does not apply to loss caused directly or indirectly by *nuclear hazard,* except that direct loss by fire resulting from the *nuclear hazard* is covered.

**23.**  **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility we will suggest annual changes, to your policy limits. These suggestions will be made effective on the renewal of your policy, and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**24.**  **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

---

## DEFINITIONS

**1.**  Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

      **a.**  your spouse, if a resident of the same household; or

      **b.**  your *domestic partner,* if a resident of the same household.

        *"Domestic partner"* means a person living as a continuing partner with you and:

        **(1)**  is at least 18 years of age and competent to contract;

        **(2)**  is not a relative, and

        **(3)**  shares with you the responsibility for each other's welfare, evidence of which includes:

          **(a)**  the sharing in the domestic responsibilities for the maintenance of the household; or

          **(b)**  having joint financial obligations, resources, or assets; or

          **(c)**  one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

        *Domestic partner* does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

"We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

**2.**  **"Actual cash value"**

      **a.**  When the damage to property is economically repairable, *actual cash value* means the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

      **b.**  When damage to property is not economically repairable or loss prevents repair *actual cash value* shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

      **c.**  Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

Case ID: 150703031

     d.   *Actual cash value* shall not include taxes or any expenses unless incurred following the loss.

3.   "Business" means:

     a.   trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

     b.   any other activity, including civic or public, engaged in for money or other compensation.

*Business* does not include volunteer activities for which no money is received other than payment for expenses incurred to perform the activity.

4.   "Earthquake" means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

5.   "Fungi" means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of *fungi,* including growth proliferation or spread of *fungi* or the current or past presence of *fungi.*

6.   *"Insured"* means:

     a.   you; and

     b.   so long as you remain a resident of the Described Location, the following residents of your household at the Described Location:

         (1)   your relatives;

         (2)   any other person under the age of 21 who is in the care of any person described in **6.a.** or **6.b.(1)** above.

7.   *"Motorized vehicle"* means all motorized land or amphibious conveyances for the transport of persons or property, including those used for recreational purposes. *Motorized vehicle* includes, but is not limited to, any motor vehicle, motorized golf cart, motorized bicycle or scooter, snowmobile, or motorized farm or earth moving equipment.

8.   *"Pollutants or contaminants"* means any of the following:

     a.   liquid fuels;

     b.   lead or any materials containing lead;

     c.   asbestos or any materials containing asbestos;

     d.   radon;

     e.   formaldehyde or any materials containing formaldehyde;

     f.   electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

     g.   carbon monoxide;

     h.   pathogenic or poisonous biological materials;

     i.   acids, alkalis or chemicals;

     j.   radioactive substances; or

     k.   any other irritant or contaminant including waste, vapor, fumes or odors.

Case ID: 150703031

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.**

## SPECIAL PROVISIONS

(For use with policies: (1) covering a 1 through 4 family dwelling occupied in whole or in part by the named insured; or (2) which include neither Coverage **A** nor **B**.)

### GENERAL EXCLUSIONS

Item **9. Intentional Loss** is replaced by the following:

**9.   Intentional Loss**

    **a.**   Intentional Loss means any loss arising out of any act an *insured* commits or conspires to commit with the intent to cause a loss. In the event of such loss, no *insured* is entitled to coverage, even *insureds* who did not commit or conspire to commit the act causing the loss.

    **b.**   However, this exclusion will not apply to deny payment to the *insured* who did not cooperate in or contribute to the creation of the loss if the loss:

        **(1)**   is otherwise covered property under Coverage **A**, **B** or **C** of the policy; and

        **(2)**   arises out of abuse to that innocent *insured* by another *insured*.

        With respect to this provision, abuse means:

        **(a)**   abuse as defined in the Pennsylvania Protection From Abuse Act; or

        **(b)**   attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

    If we pay a claim under this provision **9.b.**, our payment to the *insured* is limited to that *insured's* insurable interest in the property. In no event will we pay more than the Limit of Liability.

### GENERAL CONDITIONS

Throughout this policy, the following is added to any provision which uses the term *actual cash value:*

*Actual cash value* is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. *Actual cash value* applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The *actual cash value* of the lost or damaged property may be significantly less than its replacement cost.

Item **11.   Our Option** is deleted and replaced by the following:

**11.   Our Option**

    We may repair or replace any part of the damaged property with material or property of like kind and quality if we give you written notice of our intention to do so within 15 working days after we receive your signed, sworn proof of loss.

Item **16. Cancellation** is deleted and replaced by the following:

**16.   Cancellation**

    **a.**   You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

    **b.**   We may cancel this policy only for the reasons stated in this condition by notifying the insured in writing of the date cancellation takes effect. This cancellation notice may be delivered to or mailed to the insured named in the Declarations at the mailing address shown in the policy or at a forwarding address. Proof of mailing shall be sufficient proof of notice.

        **(1)**   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the insured named in the Declarations at least 30 days before the date cancellation takes effect.

(2)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons by notifying the insured named in the Declarations at least 30 days prior to the proposed cancellation date:

    (a)   this policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us;

    (b)   there has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

    (c)   there is a substantial increase in hazard insured against by reason of willful or negligent acts or omissions by the insured;

    (d)   the insured has failed to pay the premium by the due date, whether payable to us or to our agent or under any finance or credit plan; or

    (e)   for any other reason approved by the Pennsylvania Insurance Commissioner.

This provision shall not apply if the named insured has demonstrated by some overt action to us or to our agent that the insured wishes the policy to be canceled.

Delivery of such written notice by us to the insured named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

**c.**   When the policy is canceled, the premium from the date of cancellation to the expiration date will be refunded. When the policy is canceled, the return premium will be pro rata.

**d.**   If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

Item **17. Non-Renewal** is deleted and replaced by the following:

**17.   Nonrenewal.** We will not refuse to renew this policy except for one of the reasons referred to in paragraph b. of the Cancellation Provision of this endorsement. We may refuse to renew for one of the listed reasons by mailing to the insured named in the Declarations at the mailing address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy. Delivery of such written notice by us to the insured named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

This provision does not apply if:

**a.**   We have indicated our willingness to renew and the insured has failed to pay the premium by the due date; or

**b.**   the named insured has indicated to us or our agent that the insured does not wish the policy to be renewed.

Under **21. Death** the following paragraph is added:

**c.**   Insurance under this policy will continue as provided in Paragraph **(1)** or **(2)** whichever is later:

    (1)   For 180 days after your death regardless of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date; or

    (2)   Until the end of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date.

    Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period;

All other provisions of this policy apply.

(For use with policies covering a 1 through 4 family dwelling not occupied in any part by the named insured.)

## GENERAL EXCLUSIONS

Item 9. **Intentional Loss** is replaced by the following:

9. **Intentional Loss**

    **a.**    Intentional Loss means any loss arising out of any act an *insured* commits or conspires to commit with the intent to cause a loss. In the event of such loss, no *insured* is entitled to coverage, even *insureds* who did not commit or conspire to commit the act causing the loss.

    **b.**    However, this exclusion will not apply to deny payment to the *insured* who did not cooperate in or contribute to the creation of the loss if the loss:

        **(1)**    is otherwise covered property under Coverage **A, B** or **C** of the policy; and

        **(2)**    arises out of abuse to that innocent *insured* by another *insured.*

            With respect to this provision, abuse means:

        **(a)**    abuse as defined in the Pennsylvania Protection From Abuse Act; or

        **(b)**    attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If we pay a claim under this provision **9.b.,** our payment to the *insured* is limited to that *insured's* insurable interest in the property. In no event will we pay more than the Limit of Liability.

## GENERAL CONDITIONS

Throughout this policy, the following is added to any provision which uses the term *actual cash value:*

*Actual cash value* is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. *Actual cash value* applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The *actual cash value* of the lost or damaged property may be significantly less than its replacement cost.

Item 11. **Our Option** is deleted and replaced by the following:

11. **Our Option**

    We may repair or replace any part of the damaged property with material or property of like kind and quality if we give you written notice of our intention to do so within 15 working days after we receive your signed, sworn proof of loss.

Item 16. **Cancellation** is deleted and replaced by the following:

16. **Cancellation**

    **a.**    You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

    **b.**    We may cancel this policy subject to the provisions of this condition by notifying the insured named in the Declarations in writing of the date cancellation takes effect and the reason for cancellation. This cancellation notice may be delivered to or mailed to the insured named in the Declarations at the last mailing address known to us; if mailed, it will be registered or first class mail. Proof of mailing shall be sufficient proof of notice.

        **(1)**    When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the insured named in the Declarations at least 30 days before the date cancellation takes effect.

        **(2)**    When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

        **(a)**    You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

Case ID: 150703031

(b) You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

(c) A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(d) Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(e) Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(f) Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be canceled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

c. If this policy is canceled, we will send the insured named in the Declarations any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the insured named in the Declarations cancels, the refund may be less than the pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

Item **17. Non-Renewal** is deleted and is replaced by the following:

**17. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the insured named in the Declarations at least 60 days before the expiration date of the policy.

Under **21. Death** the following paragraph is added:

c. Insurance under this policy will continue as provided in Paragraph (1) or (2) whichever is later:

(1) For 180 days after your death regardless of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date; or

(2) Until the end of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date.

Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period;

The following condition is added:

**25. Increase in Premium**

If we increase your renewal premium, we will mail or deliver to the insured named in the Declarations:

a. Written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase; and

b. An estimate of the increase at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the insured named in the Declarations at the last mailing address known to us. If notice is mailed, it will be by registered or first class mail. Proof of mailing shall be sufficient proof of notice.

All other provisions of this policy apply.

## OPTION H — PREMISES LIABILITY

### AGREEMENT

We will provide the insurance described in this optional coverage in return for the additional premium and compliance with all applicable provisions of the policy.

### COVERAGES

1. **Coverage L — Premises Liability**

   We cover the *insured's* liability for *bodily injury* or *property damage* caused by an *occurrence* arising out of the ownership, maintenance, occupancy or use of the *insured location,* not otherwise excluded.

   If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

   **a.** pay up to our limit of liability for the damages for which the *insured* is legally liable. Damages include pre-judgment interest awarded against the *insured;* and

   **b.** provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

2. **Coverage M — Medical Payments to Others**

   We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and prosthetic devices. This coverage does not apply to any *insured* other than *residence employees.* As to others, this coverage applies only:

   **a.** to any person on the *insured location* with the permission of any *insured;* or

   **b.** to any person off the *insured location,* if the *bodily injury:*

       **(1)** arises out of a condition on the *insured location* or the ways immediately adjoining;

       **(2)** is caused by the activities of any *insured;* or

       **(3)** is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured.*

3. **Additional Coverages**

   We cover the following in addition to the limits of liability:

   **a. Claim Expenses.** We pay:

       **(1)** expenses incurred by us and costs taxed against any *insured* in any suit we defend;

       **(2)** premiums on bonds required in a suit defended by us, but not for bond amounts greater than our limit of liability for Coverage L. We are not obligated to apply for or furnish any bond;

       **(3)** reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting us in the investigation or defense of any claim or suit; and

       **(4)** prejudgment interest awarded against the *insured* on that part of the judgment we pay. Any prejudgment interest awarded against an *insured* is subject to the applicable Pennsylvania Rules of Civil Procedure.

   **b. First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to any insured.

P-4115/PAEP 11/09

## EXCLUSIONS

1. **Coverage L — Premises Liability** and **Coverage M — Medical Payments to Others** do not apply to *bodily injury* or *property damage:*

   **a.** which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured.*

   This exclusion applies to any *insured* having the capacity to form intent, or whose capacity to form intent is impaired through the use of alcohol or illegal use of drugs.

   **b.** which results from violation of:

       **(1)** criminal law; or

       **(2)** local or municipal ordinance,

   committed by, or with the knowledge or consent of any *insured.*

   This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

   Exclusions **a.** and **b.** do not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property. However, use of force by any *insured* while using alcohol or while illegally using drugs, voids this exception.

   Exclusions **a.** and **b.** apply even if such *bodily injury* or *property damage* is of a different kind or degree than expected or intended, or such *bodily injury* or *property damage* is sustained by a different person or persons than expected or intended.

   **c.** arising out of *business* pursuits or employment of any *insured.*

   This exclusion does not apply to:

       **(1)** incidental activities which are ordinary to non-*business* pursuits; or

       **(2)** the rental or holding for rental of an *insured location:*

           **(a)** for the exclusive use as a residence;

           **(b)** in part, unless intended for the exclusive use as a residence by more than two roomers or boarders; or

           **(c)** in part, as an office, school, studio or private garage;

   **d.** arising out of the rendering or failing to render professional services;

   **e.** arising out of any premises:

       **(1)** owned by any *insured;*

       **(2)** rented to any *insured;*

       **(3)** rented to others by any *insured;*

   that is not an *insured location.*

   **f.** arising out of the ownership, rental, maintenance, occupancy, operation, use, loading or unloading or the entrustment by the *insured* to any person of:

       **(1)** an *aircraft,* hovercraft, aircushion;

       **(2)** a *motorized vehicle,* other than a *motorized vehicle* used solely for the maintenance of an *insured location* while on an *insured location,* which is:

           **(a)** not designed for travel on public roads;

           **(b)** not subject to motor vehicle registration, licensing or permits; and

           **(c)** is not a motorized golf cart or vehicle designed for use as a golf cart or any similar vehicle;

       **(3)** any trailers, or semitrailer which is being carried on, towed by, or hitched to a *motorized vehicle;* or

       **(4)** any watercraft. This exclusion does not apply while the watercraft is stored.

Case ID: 150703031
Page 2 of 7

g. caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. arising out of:

    (1) the entrustment by any *insured* to any person;

    (2) failure to supervise or negligent supervision by any *insured* of any person;

    (3) any act, decision or omission by any *insured;*

    (4) any liability statutorily imposed on any *insured;* or

    (5) any liability assumed through an unwritten or written agreement by any *insured;*

    with regard to any *aircraft,* hovercraft, aircushion, *motorized vehicle,* watercraft or *personal watercraft* which is excluded by this endorsement;

i. which arises out of the transmission of a communicable disease by any *insured;*

j. arising out of physical or mental abuse, corporal punishment, sexual molestation or sexual harassment; or

k. arising out of the use, sale, manufacture, delivery, transfer or possession of a controlled substance(s) including their paraphernalia. Controlled substances, as defined by state or Federal law, include but are not limited to any form, derivative, mixture, or any quantity of amphetamines, barbiturates, cocaine, LSD, marijuana, methamphetamine, PCP, and all narcotic drugs.

This exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2. **Coverage L — Premises Liability** does not apply to:

a. Liability:

    (1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

    (2) under any other contract or agreement entered into by an *insured.* However, this exclusion does not apply to written contracts:

        (a) that directly relate to the ownership, maintenance or use of an *insured location;* or

        (b) where the liability of others is assumed by you prior to an *occurrence;*

    unless excluded in **(1)** above or elsewhere in this policy;

b. *punitive damages* awarded against any *insured;*

c. liability arising directly or indirectly, in whole or in part, out of actual or alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungi,* bacteria or other microbes.

This exclusion includes:

    (1) the cost of testing for, or monitoring of *fungi,* bacteria or other microbes, or tearing out or removal of property to facilitate testing or monitoring;

    (2) disclosure or failure to disclose, advise or failure to advise, of *fungi,* bacteria or other microbes, or of conditions contributing to any ensuing *fungi,* bacteria or other microbes; or

    (3) any liability imposed upon any *insured* by any governmental authority.

This exclusion does not apply to *bodily injury* arising from *fungi* or bacteria intended for consumption or bacteria naturally occurring in and arising from foods.

d. liability arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

    (1) request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants;* or

    (2)    claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants;*

e.    *property damage* to property owned by any *insured.* This includes costs or expenses incurred by any *insured* or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an *insured location;*

f.    any written or oral agreement involved in the sale or transfer of real property, including but not limited to the following:

    (1)    known or unknown property or structural defects;

    (2)    known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

    (3)    known or unknown soil conditions or drainage problems; or

    (4)    concealment or misrepresentation of any known defects.

g.    *property damage* to property rented to a tenant of any *insured;*

h.    *property damage* to property rented to, occupied or used by or in the care of the *insured.*

    This exclusion does not apply to *property damage* caused by fire, smoke or explosion;

i.    *bodily injury* to any *insured* eligible to receive any benefits required to be provided or voluntarily provided by the *insured* under any workers' compensation, non-occupational disability, or occupational disease law;

j.    *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

k.    *bodily injury* to any *insured.*

    This exclusion also applies to any claim made or suit brought against you or any *insured:*

    (1)    to repay; or

    (2)    share damages with;

    another person who may be obligated to pay damages because of *bodily injury* to any *insured;*

l.    liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

m.    liability arising out of any animal that any *insured* acquires, owns or keeps.

3.    **Coverage M — Medical Payments to Others,** does not apply to *bodily injury:*

a.    to an *insured;*

b.    to any person off the *residence premises* unless the *bodily injury* arises out of condition on the ways immediately adjoining the *residence premises;*

c.    to any employee if the *bodily injury* arises out of employment by any *insured* or tenant;

d.    to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

e.    from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these; or

f.    to any tenant or other person, regularly residing on any part of the *residence premises;*

g.    to any *insured* engaged in maintenance repair, alteration, demolition or new construction of the *residence premises.*

---

## CONDITIONS

1.    **Policy Period.** This coverage applies only to *bodily injury* or *property damage* which occurs during the policy period.

2. **Limit of Liability.** Regardless of the number of *insureds,* claims made or persons injured, our total liability under Coverage L stated in this policy for all damages resulting from any one *occurrence* shall not exceed the limit of liability for Coverage L stated in the Declarations.

 Our total liability under Coverage M for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage M stated in the Declarations.

3. **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

4. **Duties After An Occurrence.** In case of an *occurrence,* the *insured* shall perform the following duties that apply. We have no duty to provide coverage under this endorsement if your failure to comply with the following duties is prejudicial to us. The *insured* shall help us by seeing that these duties are performed:

 a. give written notice to us or our agent as soon as practicable, which sets forth:

 (1) the identity of the policy and *insured;*

 (2) reasonably available information on the time, place and circumstances of the accident or *occurrence;* and

 (3) names and addresses of any claimants and available witnesses;

 b. cooperate with us in the investigation, settlement or defense of any claim or suit;

 c. promptly forward to us every notice, demand, summons or other process relating to the *occurrence;*

 d. at our request, assist in:

 (1) making settlement;

 (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

 (3) the conduct of suits and attend hearings and trials;

 (4) securing and giving evidence and obtaining the attendance of witnesses;

 e. no *insured* shall, except at such *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

5. **Duties of an Injured Person — Coverage M — Medical Payments to Others.** The injured person or someone acting on behalf of the injured person shall:

 a. give us written proof of claim, under oath if required, as soon as practicable; and

 b. execute authorization to allow us to obtain copies of medical reports and records;

 the injured person shall submit to physical examination by a physician selected by us when and as often as we reasonably require.

6. **Payment of Claim — Coverage M — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

7. **Suit Against Us.** No action shall be brought against us unless there has been full compliance with all of the policy provisions.

 No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

9. **Other Insurance — Coverage L — Premises Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

10. **Our Right to Recover.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

 If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

P-4115/PAEP 11/09

Case ID: 150703031
Page 5 of 7

Subrogation does not apply to **Coverage M — Medical Payments to Others.**

11. **Interest.** We will pay the interest on judgments, subject to all of the following:

   a.   any notice, demand, summons, judgment, or any process is promptly forwarded to us as required by Condition d.(3) under **Duties After An Occurrence.**

   b.   we accept the defense or agree to the judgment.

   c.   we will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

   d.   we will pay that which accrues after entry of the judgment and before we pay, tender, or deposit in court.

   e.   if we appeal the judgment, we will pay interest on the entire judgment.

   f.   post-judgment interest is in addition to the applicable limit of liability.

   g.   where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

---

The following are additions or revisions to the policy definitions with respect to the coverage provided by this endorsement.

## DEFINITIONS

1. **"Aircraft"** means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

2. **"Bodily injury"** means:

   a.   bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

   b.   personal injury,

      (1)   arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

         (a)   false arrest, detention or imprisonment;

         (b)   malicious prosecution;

         (c)   the wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of any **insured;**

         (d)   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

         (e)   oral or written publication of material that violates a person's right of privacy.

      (2)   We do not cover personal injury:

         (a)   caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another or would inflict personal injury;

         (b)   arising out of a criminal act committed by or at the direction of any **insured;**

         (c)   sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any **insured;**

         (d)   arising out of civic or public activities performed for pay by any **insured;** or

         (e)   arising out of physical abuse, corporal punishment or sexual molestation.

      (3)   Under Exclusions, **Coverage L — Premises Liability** and **Coverage M — Medical Payments to Others** exclusions **1.a.b.i.** and **j.** do not apply to personal injury. All other exclusions of this endorsement apply.

3. **"Insured"** also means:

   a.   you; and

Case ID: 150703031
Page 6 of 7

7846X

     **b.**  so long as they remain a resident of your household, the following residents:

        **(1)**  your relatives; and

        **(2)**  any other person under the age of 21 who is in the care of any person named above.

**4.**   *"Insured location"* means the *residence premises;*

**5.**   *"Occurrence"* means an accident, including exposure to conditions which results in *bodily injury* or *property damage* during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**6.**   *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**7.**   *"Property damage"* means physical injury to, or destruction of, or loss of use of tangible property.

**8.**   *"Punitive Damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, including exemplary or aggravated circumstances damages, or damages which are awarded for any purpose other than compensatory damages for *bodily injury* or *property damage.*

**9.**   *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

   A *residence employee* does not include a temporary employee who is furnished to an *insured* to substitute for a permanent *residence employee* on leave or to meet seasonal or short-term workload conditions.

**10.**  *"Residence premises"* means:

     **a.**  the one to four family dwelling or condominium; or

     **b.**  that part of any other building;

which is shown as the Described Location in the Declarations.

*Residence premises* also includes other structures and grounds at the Described Location.

All other provisions of this policy apply.

Case ID: 150703031

This policy is signed on our behalf by our President and Secretary.

Timothy M. Sweeney
President

Dexter Legg
Vice President and Secretary

This policy includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CHO-1227/EP 11/89
G20

1609072000000116160036947

## PENNSYLVANIA NOTICE

"Insurance Consultation Services Exemption Act" of Pennsylvania

Employees or agents of an insurance company may provide services such as surveys, inspections, consultations or advice to reduce the likelihood of injury, death or loss. To allow for these activities to occur, the law provides they are not liable for damages from injury, death, or loss as a result of these acts or omissions pertaining to issuing or renewing insurance policies unless:

- the courts determine if the acts or omissions constitute a crime, actual malice or gross negligence;

- the consultation service was provided under a written service contract not related to a policy of insurance;

- the injury, death or loss occurred during the actual performance of the services and was caused by the employee's or agent's negligence.

SA-2374/PAEP 11/98



| | | |
|---|---|---|
| | Safeco Insurance Company of America | Mailing Address:<br>PO Box 515097<br>Los Angeles, CA 90051 |
| | PO Box 515097<br>Los Angeles, CA 90051 | Phone:   (317) 428-4857<br>Fax:      (888) 268-8840 |

November 6, 2014

Jade Jackson
5215 Catharine St
Philadelphia, PA  19143-2624

Insured Name:        Jade Jackson
Policy Number:       OK6160036
Loss Date:           October 16, 2014
Claim Number:        930797475002

Dear Ms. Jade Jackson:

Safeco Insurance Company of America would like to thank you for the opportunity to service you.

We have received notice of your recent loss located at 5226 Cedar Ave, Philadelphia, PA, 19143-1525 which reportedly occurred on or about October 16, 2014. Please note that at this time Safeco Insurance Company of America cannot confirm or deny coverage for this loss. The purpose of this letter is to advise you that an investigation into this matter will be conducted under a Reservation of Rights so that the investigation can continue without prejudice to your rights or Safeco Insurance Company of America's rights under the policy.

While we rely on the entirety of the insurance contract for our coverage position, the remainder of this letter will point out certain sections which may be particularly applicable to this claim. Please refer to your insurance policy form P-4103/EP 7/08, which states:

**"PERILS INSURED AGAINST**
    **COVERAGE A — DWELLING AND COVERAGE B — OTHER STRUCTURES**
    We insure for accidental direct physical loss to the property described in
    Coverages **A** and **B** except:

      1. losses excluded under **General Exclusions**

**GENERAL EXCLUSIONS**
We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **9. Intentional Loss;** meaning any loss arising out of any act committed:
      **a.** by or at the direction of any *insured* or any person or organization named as an additional *insured*;
      **b.** with the intent to cause a loss.
    This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

E
X
H
I
B
I
T

"B"

Case ID: 150703031

Page 2
Jade Jackson
November 6, 2014

c. the *insured* claiming a property loss files a police report and cooperates with any law
enforcement investigation relating to the act of domestic abuse; and
d. the *insured* claiming a property loss did not cooperate in or contribute to the creation of
the property loss.
Payment pursuant to this provision shall be limited to the insurable interest in the property of
the *insured* claiming a property loss, less payments made pursuant to **General Conditions,
Mortgage Clause.**
e. For purposes of this provision, "domestic abuse" means:
(1) physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm,
bodily injury, or assault between family or household members;
(2) sexual assault of one family or household member by another;
(3) stalking of one family or household member by another family or household member; or
(4) intentionally, knowingly, or recklessly causing damage to property so as to intimidate or
attempt to control the behavior of another family or household member."

Any information being requested is necessary to allow us to properly investigate coverage under
this policy and is made in accordance with the following policy provisions:

## "GENERAL CONDITIONS

**4. Your Duties After Loss.** In case of a loss to which this insurance may apply, you must
perform the
following duties:
a. cooperate with us in the investigation, settlement or defense of any claim or suit;
b. give immediate notice to us or our agent;
c. notify the police in case of loss by theft;
d. protect the property from further damage, make reasonable and necessary repairs required to
protect the property and keep an accurate record of repair expenses;
e. prepare an inventory of the loss to the building and damaged personal property showing in
detail the quantity, description, *actual cash value* and age. Attach all bills, receipts and related
documents that justify the figures in the inventory;
f. as often as we reasonably require:
(1) exhibit the damaged and undamaged property;
(2) provide us with records and documents we request and permit us to make copies; and
(3) submit to examinations under oath and subscribe the same. We may examine you
separately and apart from your spouse or any other *Insured.* You shall not interfere with us
examining any other *insured;*
g. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth,
to the best of your knowledge and belief:
(1) the time and cause of loss;
(2) interest of the insured and all others in the property involved and all encumbrances on the
property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of the policy;
(5) specifications of any damaged building and detailed repair estimates;
(6) an inventory of damaged personal property described in **4.e.;** and
(7) receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent
and Rental Value.**"

Safeco Insurance Company of America will continue to investigate this claim. However, Safeco
Insurance Company of America reserves any and all rights and defenses allowed under the policy
of insurance and the law. No action taken by Safeco Insurance Company of America, its
employees and/or agents, is intended to be or should be considered to be a waiver of any of these
rights or defenses under the policy of insurance or the law.

CV2136 10/14

Case ID: 150703031

Page 3
Jade Jackson
November 6, 2014


If you have any questions regarding this claim, please feel free to contact me at one of the numbers listed below.

Sincerely,


Martha Gundel

Safeco Insurance Company of America
(317) 428-4857 Fax: (888) 268-8840
martha.gundel@safeco.com

GV2138 10/14

Case ID: 150703031



**CITY OF PHILADELPHIA**
**DEPARTMENT OF LICENSES AND**
**INSPECTIONS**

Municipal Services Building
1401 JFK Blvd., 11th Floor
Philadelphia, PA 19102
215-686-2583
CSU@phila.gov

## FINAL WARNING
## UNSAFE BUILDING

JACKSON JADE
5215 CATHARINE ST
PHILADELPHIA PA 19143

PROPERTY IN VIOLATION: 5226 CEDAR AVE

Case Number:   457081
Date of Notice: 12/03/14

Dear Sir/Madam,

This is to inform you that the Department of Licenses and Inspections inspected the subject premises on 12/03/14 and has declared it UNSAFE, in whole or in part, pursuant to Section PM-307.0 of the Philadelphia Property Maintenance Code. The results are included in the violation section below.

You are directed to obtain all necessary permits as required by the City and to make repairs or demolish the structure to remove the unsafe condition in order to address public safety. Failure to comply with this order within 30 days may result in the City taking action to demolish the structure and to stucco remaining party walls exposed by the demolition. You, the owner, will be billed for all costs incurred by the City, including administrative fees.

If you have any questions regarding this matter please contact: INSPECTOR CLARK at ANTHONY.CLARK@phila.gov or the district office noted above.

## VIOLATIONS:

The floor/ceiling assembly between the indicated floor and the floor below of the subject structure is fire damaged and in danger of collapse. The structure has therefore been designated as unsafe in accordance with Section 307 of the Philadelphia Property Maintenance Code. You must repair the floor/ceiling assembly or demolish the structure in whole or in part. Please see additional important information below. [See PM-307.1]

**LOCATION:** through out 1st floor

The Department's Community Life Improvement Program (C.L.I.P.) has inspected the subject structure and designated it as unsafe in accordance with Section 307 of the Philadelphia Property Maintenance Code. (See PM-307.1)
The owner of every vacant building must obtain a license from the Department. If you do not have the required license for this vacant building, you must obtain it. For license information, call 215 686-2490. (See PM-102.4)
Important additional information:
If you fail to comply with this order the City may eliminate the unsafe condition by repair or demolition using its own forces or by contract and the owner will be billed for all costs incurred including an administrative cost. Failure to pay such bill will result in a lien being placed against the property. (See PM-307.6)
This designation will remain until the structure is made safe and secure or taken down and removed.
If you intend to appeal this violation, you must apply at Boards Administration, 11th Floor, Municipal Services Building, 1401 John F. Kennedy Blvd., Philadelphia, PA 19102, within 5 days of the date of this notice. You will need to refer to the account number on this notice to file an appeal. (See A-801.2)

1     of     2

# EXHIBIT "C"

Case ID: 150703031

Note: If you intend to demolish or rehabilitate the structure, or any part of it, you must obtain all required permits in advance of beginning such work.

LOCATION: through out

PENALTIES AND FEES

Fines shall be imposed from 12/03/14 and shall be assessed in the amount of $150 to $2000 per violation each and every day the violation remains uncorrected.

Your failure to correct the violations may result in the revocation or suspension of certain licenses and permits.

Your failure to correct the violations may also result in the City filing a legal action against you to obtain compliance, an injunction, and the imposition of fees and fines.

Failure to comply with the terms of this Notice and Order will result in an automatic assessment of reinspection fees in accordance with Chapter 9 of the Philadelphia Code. $75 will be imposed on the second failed reinspection doubling with each subsequent failure up to a $300 fee per reinspection.

Case ID: 150703031



Safeco Insurance Company of America

Mailing Address:
P.O. Box 515097
Los Angeles, CA 90051-5097

Phone:   (317) 428-4857
Fax:      (888) 268-8840

December 9, 2014

Jade Jackson
5215 Catharine St
Philadelphia, PA  19143-2624

| | |
|---|---|
| Claim Number: | 930797475002 |
| Insured Name: | Jade Jackson |
| Date of Loss: | October 16, 2014 |
| Policy Number: | OK6160036 |
| Underwriting Company: | Safeco Insurance Company of America |

RE: Claim status

Dear Ms. Jade Jackson:

Our commitment to you was to handle your claim quickly and efficiently, therefore, we wanted to inform you of the status of your claim.

The circumstances of this occurrence are still under active investigation. The fact gathering of the details for your claim requires additional time and consideration before we can complete the final determination on your claim.

We are still working to resolve your claim, here's why:
- We are still investigating the cause and origin and circumstances surrounding this loss.
- We are continuing our investigation under the previously issued Reservation of Rights.

Thank you for your continued patience.

Martha Gundel
martha.gundel@safeco.com
(317) 428-4857 Fax: (888) 268-8840

**EXHIBIT "D"**

Case ID: 150703031

CA1505 /EF 10/14



Safeco Insurance Company of America

Mailing Address:
P.O. Box515097
Los Angeles, CA 90051-5097

Phone:   (317) 428-4857
Fax:     (888) 268-8840

A Liberty Mutual Company

February 26, 2015

Jade Jackson
5215 Catharine St
Philadelphia, PA  19143-2624

Claim Number:          930797475002
Insured Name:          Jade Jackson
Date of Loss:          October 16, 2014
Policy Number:         OK6160036
Underwriting Company:  Safeco Insurance Company of America

RE: Claim status

Dear Ms. Jade Jackson:

Our commitment to you was to handle your claim quickly and efficiently, therefore, we wanted to inform you of the status of your claim.

The circumstances of this occurrence are still under active investigation. The fact gathering of the details for your claim requires additional time and consideration before we can complete the final determination on your claim.

We are still working to resolve your claim, here's why:

- We are continuing to investigate the circumstances surrounding this loss under our Reservation of Rights. Our investigator will continue to let you know what information he still needs.

Thank you for your continued patience.

Martha Gundel
martha.gundel@safeco.com
(317) 428-4857 Fax: (888) 268-8840

# EXHIBIT "E"

Case ID: 150703031

CA1505 /EF 10/14

**Safeco Insurance**
A Liberty Mutual Company

SAFECO INSURANCE COMPANY OF AMERICA
P O BOX 515097, LOS ANGELES, CA 90051

JUNE 1, 2015

PENN AUTO AND HOME INC
PENNSYLVANIA INS ALLIANCE INC
13 SAINT ALBANS CIR STE D
NEWTOWN SQ        PA  19073-3622

AGENT TELEPHONE:   (610) 325-7366

JADE JACKSON
5215 CATHARINE ST
PHILADELPHIA PA  19143-2624

Re: Notice of Nonrenewal —     Landlord Protection Policy OK6160036

Dear Policyholder,

After careful consideration, we have concluded that we will not
be able to renew your Landlord Protection insurance policy.
Coverage will end at 12:01 a.m. standard time on August 5, 2015.

While we regret this decision, we feel it necessary for the
following reason:

    Due to the 10-16-14 fire loss (open). We will provide loss
    information upon receipt of your written request. You must make
    your request within 10 days of receiving this notice.

As you can see from the date and time shown above, your coverage
does not end immediately. This should allow you enough time to
arrange for other insurance before your policy expires. Your
Independent Agent has been informed of this decision and can best
advise you on the available options.

SAFECO INSURANCE COMPANY OF AMERICA
Personal Lines Underwriting

IMPORTANT NOTICE:  Please see reverse side for information we are
required to provide you.

CN 70616ED 11/05
G6

# EXHIBIT "F"
INSURED'S COPY

Case ID: 150703031

You may be eligible for insurance through the Pennsylvania FAIR Plan. Information is available at the location provided below or contact your agent for details.

Insurance Placement Facility of Pennsylvania
530 Walnut Street, Suite 1650
Philadelphia, Pennsylvania 19106-3698
Phone: (800) 462-4972 or (215) 629-8800

**Right of Insured to Request the Insurance Commissioner to Review the Action by the Insurer:**

You may request in writing within 10 days of receipt of this notice that the Insurance Commissioner review the action taken by this company. To do this, sign and send a copy of this form to the PENNSYLVANIA INSURANCE COMMISSIONER at the HARRISBURG REGIONAL OFFICE:

Pennsylvania Insurance Department
Bureau of Consumer Services
1209 Strawberry Square
Harrisburg, Pennsylvania 17120
Fax: (717) 787-8585
Harrisburg Regional Office Phone: (877) 881-6388

The following applies to policies insuring only non-owner occupied dwellings (Landlord Protection): Upon your written request, we will provide you with information on losses you have had during the last three years, or for the period of time during which we have provided you with coverage, whichever is less. Your request must be made within 10 days of your receipt of this notice of cancellation or nonrenewal. We will provide the requested information within 30 days of the receipt of your written request.

_____
Signature of Insured

ON-3720/PAEP 11/14 _____

199X

Case ID: 150703031

# Residential Lease

**Clause 1. Identification of Landlord and Tenant**
This agreement is entered into between _____ _Kenyon Robinson_ _____ [Tenant] and
_____ _Jade Jackson_ _____ [Landlord]. Each Tenant is jointly and severally liable for the
payment of rent and performance of all other terms of this Agreement.

**Clause 2. Identification of Premises**
Subject to the terms and conditions in this Agreement, Landlord rents to Tenant, and Tenant rents from Landlord, for
residential purposes only, the premises located at _5226 Cedar Avenue_ _____
_____ together with the following furnishings and appliances:
_____
Rental of the premises also includes _refrigerator, stove, and dishwasher_ _____
_____

**Clause 3. Limits on Use and Occupancy**
The premises are to be used only as a private residence for Tenant(s) listed in Clause 1 of this Agreement, and the fol-
lowing minor children: _Kyrie, Khalil, and Keyshawn_ _____
Occupancy by guests for more than _____ _N/A_ _____ is prohibited without
Landlord's written consent and will be considered a breach of this Agreement.

**Clause 4. Term of the Tenancy**
The term of the rental will begin on _June 1, 2014_ , and end on _June 1, 2015_ .
If Tenant vacates before the term ends, Tenant will be liable for the balance of the rent for the remainder of the term.

**Clause 5. Payment of Rent.**
**Regular month rent**
Tenant will pay to Landlord a monthly rent of $ _1100_ , payable in advance on the first day of each month,
except when that day falls on a weekend or legal holiday, in which case rent is due on the next business day. Rent will
be paid to _Jade Jackson_ at _pick-up_ or at
such other place as Landlord designates.
**Delivery of Payment.**
Rent will be paid:
☐ by mail, to _____
☑ in person, at _5226 Cedar Avenue_ _____
**Form of payment.**
Landlord will accept payment in these forms:
☐ personal check made payable to _____
☑ cashier's check made payable to _____
☐ credit card
☑ money order
☑ cash

**EXHIBIT "G"**

Residential Lease 6-10 Pg. 1
©nolo 2012 www.nolo.com

**Prorated first month's rent.**
For the period from Tenant's move-in date, _____N/A_____, through the end of the month, Tenant will pay to Landlord the prorated monthly rent of $ _____. This amount will be paid on or before the date the Tenant moves in.

## Clause 6. Late Charges

If Tenant fails to pay the rent in full before the end of the _____7th_____ day after it's due, Tenant will pay Landlord a late charge of $ _50.00_, plus $ _____ for each additional day that the rent remains unpaid. The total late charge for any one month will not exceed $ _____. Landlord does not waive the right to insist on payment of the rent in full on the date it is due.

## Clause 7. Returned Check and Other Bank Charges

If any check offered by Tenant to Landlord in payment of rent or any other amount due under this Agreement is returned for lack of sufficient funds, a "stop payment," or any other reason, Tenant will pay Landlord a returned check charge of $ _____N/A_____.

## Clause 8. Security Deposits

On signing this Agreement, Tenant will pay to Landlord the sum of $ _3300.00_ as a security deposit. Tenant may not, without Landlord's prior written consent, apply this security deposit to the last month's rent or to any other sum due under this Agreement. Within _30 days_ after Tenant has vacated the premises, returned keys, and provided Landlord with a forwarding address, Landlord will give Tenant an itemized written statement of the reasons for, and the dollar amount of, any of the security deposit retained by Landlord, along with a check for any deposit balance.

## Clause 9. Utilities

Tenant will pay all utility charges, except for the following, which will be paid by Landlord:
_Water_

## Clause 10. Assignment and Subletting

Tenant will not sublet any part of the premises or assign this Agreement without the prior written consent of Landlord.

## Clause 11. Tenant's Maintenance Responsibilities

Tenant will: (1) keep the premises clean, sanitary, and in good condition and, upon termination of the tenancy, return the premises to Landlord in a condition identical to that which existed when Tenant took occupancy, except for ordinary wear and tear; (2) immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware; and (3) reimburse Landlord, on demand by Landlord, for the cost of any repairs to the premises damaged by Tenant or Tenant's guests or business invitees through misuse or neglect.

Tenant has examined the premises, including appliances, fixtures, carpets, drapes, and paint, and has found them to be in good, safe, and clean condition and repair, except as noted in the Landlord-Tenant Checklist.

## Clause 12. Repairs and Alterations by Tenant

a.  Except as provided by law, or as authorized by the prior written consent of Landlord, Tenant will not make any repairs or alterations to the premises, including nailing holes in the walls or painting the rental unit.

b.  Tenant will not, without Landlord's prior written consent, alter, rekey, or install any locks to the premises or install or alter any burglar alarm system. Tenant will provide Landlord with a key or keys capable of unlocking all such rekeyed or new locks as well as instructions on how to disarm any altered or new burglar alarm system.

## Clause 13. Violating Laws and Causing Disturbances

Tenant is entitled to quiet enjoyment of the premises. Tenant and guests or invitees will not use the premises or adja-

cent areas in such a way as to: (1) violate any law or ordinance, including laws prohibiting the use, possession, or sale of illegal drugs; (2) commit waste (severe property damage); or (3) create a nuisance by annoying, disturbing, inconveniencing, or interfering with the quiet enjoyment and peace and quiet of any other tenant or nearby resident.

**Clause 14. Pets**

No animal, bird, or other pet will be kept on the premises, even temporarily, except properly trained service animals needed by blind, deaf, or disabled persons and _____*N/A*_____ under the following conditions:

_____

_____

_____

**Clause 15. Landlord's Right to Access**

Landlord or Landlord's agents may enter the premises in the event of an emergency, to make repairs or improvements, or to show the premises to prospective buyers or tenants. Landlord may also enter the premises to conduct an annual inspection to check for safety or maintenance problems. Except in cases of emergency, Tenant's abandonment of the premises, court order, or where it is impractical to do so, Landlord shall give Tenant _____ notice before entering.

**Clause 16. Extended Absences by Tenant**

Tenant will notify Landlord in advance if Tenant will be away from the premises for _____ or more consecutive days. During such absence, Landlord may enter the premises at times reasonably necessary to maintain the property and inspect for needed repairs.

**Clause 17. Possession of the Premises**

a. *Tenant's failure to take possession.*
   If, after signing this Agreement, Tenant fails to take possession of the premises, Tenant will still be responsible for paying rent and complying with all other terms of this Agreement.

b. *Landlord's failure to deliver possession.*
   If Landlord is unable to deliver possession of the premises to Tenant for any reason not within Landlord's control, including, but not limited to, partial or complete destruction of the premises, Tenant will have the right to terminate this Agreement upon proper notice as required by law. In such event, Landlord's liability to Tenant will be limited to the return of all sums previously paid by Tenant to Landlord.

**Clause 18. Tenant Rules and Regulations**

☐ Tenants acknowledge receipt of, and have read a copy of, tenant rules and regulations, which are labeled Attachment A and attached to and incorporated into this Agreement by this reference.

**Clause 19. Payment of Court Costs and Attorney Fees in a Lawsuit**

In any action or legal proceeding to enforce any part of this Agreement, the prevailing party
☐ shall not / ☑ shall recover reasonable attorney fees and court costs.

**Clause 20. Disclosures**

Tenant acknowledges that Landlord has made the following disclosures regarding the premises:

☐ Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards
☐ Other disclosures:

Case ID: 150703031

**Clause 21. Authority to Receive Legal Papers**

The Landlord, any person managing the premises, and anyone designated by the Landlord are authorized to accept service of process and receive other notices and demands, which may be delivered to:

☐ The Landlord, at the following address: _5215 Catherine Street_ .

☐ The manager, at the following address: _____ .

☐ The following person, at the following address: _____

**Clause 22. Additional Provisions**

Additional provisions are as follows:

_Tenant must recycle and remove snow_

**Clause 23. Validity of Each Part**

If any portion of this Agreement is held to be invalid, its invalidity will not affect the validity or enforceability of any other provision of this Agreement.

**Clause 24. Grounds for Termination of Tenancy**

The failure of Tenant or Tenant's guests or invitees to comply with any term of this Agreement, or the misrepresentation of any material fact on Tenant's rental application, is grounds for termination of the tenancy, with appropriate notice to Tenant and procedures as required by law.

**Clause 25. Entire Agreement**

This document constitutes the entire Agreement between the parties, and no promises or representations, other than those contained here and those implied by law, have been made by Landlord or Tenant. Any modifications to this Agreement must be in writing signed by Landlord and Tenant.

_June 1, 2014_    _Jade Jackson_   _Landlord_
Date     Landlord or Landlord's Agent     Title

_5215 Catherine Street_
Address

_Phila._     _PA_     _19143_     _(215) 472-6616_
City     State     Zip Code     Phone

_June 1 2014_    _Kenyor Brown_    _(267) 971-3278_
Date     Tenant     Phone

_____   _____   _____
Date     Tenant     Phone

_____   _____   _____
Date     Tenant     Phone

PAUL J. BARTOLOMEO, JR., ESQUIRE
IDENTIFICATION NO.: 20600
THE PHILADELPHIAN, SUITE 1A1
2401 PENNSYLVANIA AVENUE
PHILADELPHIA, PA 19130
(215) 232-7200 (tel)
(215) 232-2410 (fax)
pjbartesq@aol.com

Attorney for PLAINTIFF

*Filed and Attested by
PROTHONOTARY
12 AUG 2015 02:20 pm
J. FALCONE*

| | | |
|---|---|---|
| JADE JACKSON | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | PHILADELPHIA COUNTY |
| v. | : | July Term, 2015 |
| SAFECO INSURANCE COMPANY | : | |
| | : | No. 03031 |
| Defendant. | : | |

## AFFIDAVIT OF SERVICE

       PAUL J. BARTOLOMEO, JR., Esquire, being duly sworn according to law, deposes and
says that:

       1.       He is the attorney for the Plaintiff in the above matter.

       2.       He filed a Complaint in this matter with the Court of Common Pleas of
Philadelphia County which was assigned docket number 150703031.

       3.       Pursuant to the applicable rules of civil procedure the Defendant, whose
business address is outside of the Commonwealth of Pennsylvania, was served via certified mail,
return receipt requested under cover of letter dated July 30, 2015 (see copy of cover letter
attached and marked Exhibit "A").

       4.       On August 5, 2015 the mailing was accepted and signed for by a
representative of the Defendant (see copy of return receipt card attached and marked Exhibit
"B").

Case ID: 150703031

5.      Service of the Complaint is now complete pursuant to Pennsylvania Rule of Civil Procedure 403 and 404.

_____
PAUL J. BARTOLOMEO, JR., ESQUIRE

Sworn to and subscribed              :
before me this 12th day              :
of August, 2015.                     :
                                     :
                                     :
_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SUSAN F. SPIVACK-DURST, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 2, 2016

Case ID: 150703031

## PAUL J. BARTOLOMEO, JR., P.C.

Albert Bartolomeo, Esq.
Of Counsel

Attorney At Law
THE PHILADELPHIAN
2401 PENNSYLVANIA AVENUE
SUITE 1A1
PHILADELPHIA, PENNSYLVANIA 19130-3010
(215) 232-7200
FAX (215) 232-2410

ALSO MEMBER OF NJ BAR

July 30, 2015

**VIA FIRST CLASS MAIL &**
**CERTIFIED MAIL-RETURN RECEIPT**
**7011-1570-0001-4103-4748**

Safeco Insurance Company of America
Safeco Plaza
1001 4th Avenue
Seattle, WA  98185

Attn:   Claims Department

RE:   Jackson v. Safeco
Philadelphia County CCP No. 150703031
My File #:  2942B

Dear Sir/Madam:

Please be advised that I represent Jade Jackson in connection with the above matter.

I enclose a copy of a Complaint recently filed with the Court of Common Pleas of Philadelphia County.

Please be guided accordingly.

Very truly yours,

PAUL J. BARTOLOMEO, JR.

PJB/s
Enclosure

cc:   Ms. Jennie Philip, Esquire

# EXHIBIT "A"

Case ID: 150703031

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Michael Shuff_  ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>Michael Shuff   8/5/15 |
| 1. Article Addressed to:<br><br>Safeco Insurance Company of America<br>Safeco Plaza<br>1001 4th Avenue<br>Seattle. WA  98185 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☑ No<br><br>3. Service Type<br>☑ Certified Mail®  ☐ Priority Mail Express™<br>☐ Registered  ☑ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ Collect on Delivery<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>   *(Transfer from service label)* | 7011 1570 0001 4103 4748 |

PS Form 3811, July 2013          Domestic Return Receipt

# EXHIBIT "B"

Case ID: 150703031

*Filed and Attested by
PROTHONOTARY
13 AUG 2015 01:45 pm
J. OSTROWSKI*

BENNETT, BRICKLIN & SALTZBURG LLC
BY: PAMELA A. CARLOS
ATTORNEY I.D. NO. 56396
BY: JOSEPH ACQUAVIVA
ATTORNEY I.D. NO. 204456
1601 MARKET STREET 16TH FLOOR
PHILADELPHIA, PA 19103
(215) 561-4300
carlos@bbs-law.com
acquaviva@bbs-law.com

Attorney for Defendant,
Safeco Insurance Company

| | |
|---|---|
| JADE JACKSON | : COURT OF COMMON PLEAS |
| | : TRIAL DIVISION |
| v. | : PHILADELPHIA COUNTY |
| | : |
| SAFECO INSURANCE COMPANY | : NO: 150703031 |

**ENTRY OF APPEARANCE**

TO THE PROTHONOTARY:

Kindly enter our appearance as co-counsel on behalf of defendant, Safeco Insurance Company, in the above captioned matter.

BENNETT, BRICKLIN & SALTZBURG LLC

By:   _56396   /s/ Pamela A. Carlos_____
PAMELA A. CARLOS, ESQUIRE

By:   _204456   /s/ Joseph Acquaviva_____
JOSEPH ACQUAVIVA, ESQUIRE

Attorneys for Defendant,
Safeco Mutual Insurance Company

Case ID: 150703031